**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

SHEILA JEANNETTE,

               Plaintiff,

vs.                                  Case No.  3:08-cv-869-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

               Defendant.

_____/


## OPINION AND ORDER[1]

### I.  Status

      Sheila Jeannette ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits.  Her alleged inability to work is based on physical impairments which cause severe pain and numbness in her back and lower extremities.  See Transcript of Administrative Proceedings ("Tr.") at 85-95; Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. No. 12; "Pl.'s Mem.") at 1.  On July 12, 2005, Plaintiff filed an application for disability insurance benefits, alleging an onset date of December 23, 2004.  Tr. at 66.  On September 6, 2007, the Administrative Law Judge ("ALJ") held a hearing at which three individuals testified:  (1) Bruce Witkind, M.D. ("Dr. Witkind"), a nonexamining physician; (2) Charles Heartstill, a vocational expert; and (3) Plaintiff.  Tr. at 364-460.  After the hearing, Gregory C. Keller, M.D.

---

    [1]  The parties consented to the exercise of jurisdiction by a United States Magistrate Judge, see Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 16), and the Order of Reference was entered on November 13, 2008 (Doc. No. 17).

("Dr. Keller"), one of Plaintiff's treating physicians, submitted a letter dated October 2, 2007 in response to Dr. Witkind's testimony. Tr. at 100-01. On February 7, 2008, the ALJ issued a decision finding Plaintiff not disabled. Tr. at 16-25. On July 14, 2008, the Appeals Council denied Plaintiff's request for review. Tr. at 2-4. On September 10, 2008, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1) seeking review of the Commissioner's final decision. Plaintiff has exhausted the available administrative remedies, and the case is properly before the Court.

Plaintiff raises three issues: (1) whether the ALJ improperly discounted the medical opinion of Dr. Keller, one of Plaintiff's treating physicians; (2) whether the ALJ gave improper weight to the medical opinion of Dr. Witkind, a nonexamining physician; and (3) whether the ALJ's analysis of Plaintiff's subjective pain testimony was erroneous. Pl.'s Mem. at 12-25. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds the ALJ did not clearly articulate reasons supported by substantial evidence for discounting Dr. Keller's opinion; the ALJ did not clearly articulate reasons supported by substantial evidence for giving great weight to the opinion of Dr. Witkind; and the ALJ did not articulate adequate reasons supported by substantial evidence for discrediting Plaintiff's subjective complaints of pain. Therefore, the Commissioner's final decision is due to be reversed and remanded for further proceedings.

## II. The ALJ's Decision

When determining whether an individual is disabled, an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the plaintiff (1) is currently employed; (2) has a severe impairment;

(3) has an impairment that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The ALJ performed the required five-step sequential inquiry. At step one, the ALJ established Plaintiff has not engaged in substantial gainful activity since December 23, 2004 (the alleged onset date). Tr. at 18. At step two, the ALJ found Plaintiff suffers from the following severe impairments: "history of degenerative disc disease of the lumbar spine with some spinal stenosis, history of lumbar spondylolisthesis, status post lumbar fusion from L4 to S1 with post-surgical pain; status post staphylococcus infection of the bloodstream." Tr. at 18. At step three, the ALJ stated Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 18.

The ALJ determined Plaintiff has the residual functional capacity ("RFC") for "some" light work: Plaintiff can lift and carry up to ten pounds frequently and twenty pounds occasionally; Plaintiff can sit, stand, and walk for a total of at least six hours each in an eight-hour workday; Plaintiff can frequently reach, handle, finger, feel, and push/pull objects with both hands; Plaintiff can frequently climb stairs and ramps; she can occasionally balance, stoop, kneel, crouch, and crawl; but she can never climb ropes, ladders, or scaffolds. Tr. at 18-19. Plaintiff can never work at unprotected heights, and she should not frequently work near moving mechanical parts, operating motor vehicles, humidity and wetness, dust and pulmonary irritants, or extremes in heat and cold. Tr. at 18-19. At step four, the ALJ found Plaintiff is capable of performing her past relevant work as a "cashier II" and "marker" in the

manner those jobs are actually and generally performed.  Tr. at 25.  The ALJ concluded

Plaintiff has not been under a disability[2] from December 23, 2004 (the alleged onset date)

through the date of the decision.  Tr. at 25.

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42

U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions

of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ."

Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320,

1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but

less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting

Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard

is met when there is "such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S.

389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is

reviewed to determine whether "the decision reached is reasonable and supported by

substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal

quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th

Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by

the Commissioner must be affirmed if it is supported by substantial evidence–even if the

_____

[2]  "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

evidence preponderates against the Commissioner's findings. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

### A. Opinion of Dr. Keller

Plaintiff contends the ALJ improperly discounted the opinion of Dr. Keller, one of Plaintiff's treating physicians. Pl.'s Mem. at 12. Specifically, Plaintiff argues that Dr. Keller's opinion is entitled to substantial or controlling weight, and that the ALJ's reasons for discounting his opinion are not supported by substantial evidence. <u>Id.</u> at 13-18. The Regulations instruct ALJs how to weigh the medical opinions[3] of treating physicians[4] properly. <u>See</u> 20 C.F.R. § 404.1527(d). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2). When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the

---

[3] Medical opinions are statements from physicians that reflect judgments about the nature and severity of the claimant's impairment, including symptoms, diagnosis, prognosis, and what the claimant can still do despite the impairment. 20 C.F.R. § 404.1527(a)(2).

[4] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required the for the medical condition. <u>See</u> 20 C.F.R. § 404.1502.

treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician. Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence, (2) the evidence supports a contrary finding, or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004); see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). The ALJ must "state with particularity the weight he [or she] gave the different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); see also MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

On June 29, 2005, Dr. Keller performed the following surgical procedures on Plaintiff: "[r]e-decompression of L-4-5 and L-5-S-1, left side via laminotomy and facetectomy"; "[d]ecompression of the right side L-4-5 and L-5-S-1 via laminotomy and parital facetectomy"; "[p]osterolateral fusion L-4 to the sacrum"; "[p]osterior segmental instrumentation L-4 to the sacrum, with Expedia"; "[p]osterior lumbar interbody fusion with autologous bone graft and carbon cages (Concord)"; "[r]ight posterior iliac crest bone graft harvest"; and "use of interpretation of intraoperative fluoroscopy." Tr. at 169, 295. In his October 2, 2007 letter, Dr. Keller indicated that the surgery did not have the desired outcome. Tr. at 100-01. Dr.

Keller explained, "First and foremost, at this time we do not know–definitively–whether Ms. Je[a]nnette has a solid fusion." Tr. at 100. In support of this conclusion, Dr. Keller referred to his August 24, 2006 review of a March 2006 CT scan. Tr. at 100 (referring to Tr. at 200). He also referred to a May 17, 2007 X-ray. Tr. at 100 (referring to Tr. at 197). Dr. Keller opined that, "despite the surgery, [Plaintiff] does continue to show signs of radiculopathy." Tr. at 100. Dr. Keller explained that Plaintiff "has objective evidence of an underlying medical cause for her pain." Tr. at 100. Dr. Keller believed that Plaintiff "is markedly limited in her abilities," and he recommend that she not "lift over 30 pounds, possibly 20 pounds regularly." Tr. at 101. As of the date of the letter, Dr. Keller had not released Plaintiff to do any work. Tr. at 101. Dr. Keller noted that, although "she could do no more than sedentary work," "[h]er ability to maintain steady constant employment at the sedentary level would, of course, be affected by her pain level." Tr. at 101. Dr. Keller found Plaintiff to be a "credible and cooperative patient." Tr. at 100.

The ALJ specifically addressed Dr. Keller's letter, Tr. at 21-22, which was appropriate because the letter contains opinions and information that were not already in the record prior to the September 6, 2007 hearing. The ALJ found the opinions in Dr. Keller's letter to be contradicted by Dr. Keller's own progress notes and unsupported by the objective medical evidence. Tr. at 22-23. Specifically, the ALJ discounted Dr. Keller's opinion that there was no evidence of a solid fusion because the ALJ considered this opinion to be contradicted by both an April 2006 CT scan and Dr. Keller's own treatment notes. Tr. at 22. The ALJ noted that Dr. Keller's opinion of radiculopathy is not supported by the evidence and is inconsistent with the EMG/MCV studies performed by Frank R. Collier, Jr., M.D. ("Dr. Collier"). Tr. at 22.

The ALJ observed that Plaintiff "was treated conservatively . . . ." Tr. at 20-21. The ALJ stated that most of Dr. Keller's progress notes "contain no physical examination whatsoever." Tr. at 21. The ALJ opined that the medical records suggest Plaintiff's condition is improving, and that Dr. Keller's treatment notes "in no way indicate" Plaintiff is as limited as Dr. Keller's more recent letter suggests. Tr. at 22. The ALJ observed Plaintiff was "not on significant pain medication." Tr. at 22.

After a thorough review of the entire record, the undersigned finds that the ALJ has not adequately articulated reasons for discounting Dr. Keller's opinion, except for one aspect of the ALJ's decision. The ALJ found Dr. Keller's opinion that Plaintiff suffered from radiculopathy to be contradicted by Dr. Collier's EMG/NCV studies. Tr. at 22. The ALJ's decision with respect to this aspect of Dr. Keller's opinion is supported by the record. Tr. at 104 (stating that there was "[n]o evidence of acute lumbar radiculopathy . . ."). However, in every other respect, there is evidence in the record that contradicts the ALJ's decision to discount Dr. Keller's opinion that the ALJ did not fully address. Each is discussed in turn.

The ALJ found that Plaintiff had been treated "conservatively." Tr. at 20-21. This statement is contradicted by the fact Plaintiff underwent two surgeries for her back, the most recent being a two-level lumbar fusion performed by Dr. Keller on June 29, 2005. Tr. at 169-72, 177, 243, 295-97, 304. Plaintiff suffered serious complications from that surgery due to infection. Tr. at 167, 226, 293 (stating that "[i]n no time there was evidence of infection . . ."). The surgical wound required a series of wound care treatments that lasted through September 2005. Tr. at 150-60, 254-56 (duplicate citations omitted). Months later, on March 31, 2006, Plaintiff developed another infection at the same location as the previous infection.

Tr. at 142-44,145 (stating that there was evidence of "chronic infection"). On April 2, 2006, Plaintiff was diagnosed with a staphylococcus aureus bloodstream infection, which required further extensive treatment. Tr. at 117-21. Despite the extreme complications Plaintiff suffered as a result of infection after the 2005 surgery, in August 2007, she was planning to undergo a procedure for the implantation of a spinal cord stimulator. Tr. at 103-04. The ALJ did not explain how two major back surgeries are merely conservative treatment.

In reviewing the medical evidence, the ALJ made the following observations regarding the opinion expressed in Dr. Vincenty's October 2, 2007 letter:

> He then stated that, in his opinion, the claimant may not have a solid fusion. He then contradicts himself by indicating that a prior April 2006 CT scan indicating that there was not a solid fusion. A review of that CT scan indicates that there is a posterior fusion which is stablized by the hardware placed at the time of the surgery.

Tr. at 22 (referring to Tr. at 144).

In his October 2, 2007 letter, Dr. Keller stated, "[W]e do not know–definitively–whether [Plaintiff] has a <u>solid</u> fusion." Tr. at 100 (emphasis added). Dr. Keller referred to a CT scan which he said showed a "non-healing" fusion. Tr. at 100.[5] The report from the April 4, 2006 CT scan upon which the ALJ relies states that there was "posterior fusion stablized by bilateral pedicle screws . . . ." Tr. at 144 (emphasis added). The April 4, 2006 CT scan indicates that the fusion was "stabilized" by the pedicle screws, not that the fusion was "solid." Tr. at 144. The undersigned is unsure of the difference between a "solid" fusion and a

---

[5] In his October 2, 2007 letter, Dr. Keller indicates that the CT scan occurred on August 24, 2006. Tr. at 100. However, it appears Dr. Keller is actually relying on progress notes dated August 24, 2006, which refer to a March 2006 CT scan. Tr. at 200 (referring to Tr. at 142-43). It is unclear from the letter whether Dr. Keller intended to refer to the CT scan from March 31, 2006, Tr. at 142-43, or the CT scan from April 4, 2006 on which the ALJ relies, Tr. at 144.

"stable" fusion, if any, or whether such a difference would be significant. As the ALJ indicated, Dr. Keller's subsequent progress notes from November 14, 2006 state that an X-ray showed "no clear evidence of a solid fusion . . . ." Tr. at 20 (referring to Tr. at 198). Moreover, Dr. Keller's May 17, 2007 progress notes state that an X-ray on the same date showed the "implants in good position without a particularly robust fusion." Tr. at 197. In his October 2, 2007 letter, Dr. Keller clarified that "[t]he last x-ray done on May 17, 2007, showed that [Plaintiff] still did not have a solid fusion, though there was significant movement in that direction." Tr. at 100. Thus, there is evidence the ALJ did not adequately address which indicates Plaintiff may not have had a solid fusion. In addition, the ALJ did not explain whether there is a difference between a "solid" fusion and a "stable" fusion, and the significance of such a difference. Because the ALJ did not clearly articulate his reasons for discounting Dr. Vincenty's opinion in this regard, remand is appropriate.

The ALJ found that "few if any" of Dr. Keller's progress notes contain "any physical or other clinical exam findings," and that Dr. Keller's treatment notes are lacking in "any kind of meaningful clinical assessment." Tr. at 21, 23. Yet, a review of Dr. Keller's treatment notes reveals that they contain physical and clinical findings. Dr. Keller performed a thorough physical examination during the May 31, 2005 initial evaluation, at which time he made physical and clinical findings. Tr. at 261, 280, 291. Also on May 31, 2005, X-rays were taken and MRIs were reviewed. Tr. at 261, 280, 291. Dr. Keller performed a physical exam during Plaintiff's July 14, 2005 appointment. Tr. at 282, 289 (stating that a "detailed exam" had been performed and articulating findings). An examination was performed on July 28, 2005. Tr. at 256 (stating that "[e]xam today reveals . . ."). Although Dr. Keller did not specifically use

the word "examination" in his progress notes, it is evident that examinations were in fact performed based on the observations and findings Dr. Keller made. Tr. at 253, 255 (duplicate citations omitted). Plaintiff testified that Dr. Keller would have her "bend and stuff like that," Tr. at 433, which suggests Dr. Keller did perform examinations. Moreover, Dr. Keller analyzed and made findings based on X-rays taken of Plaintiff during numerous post-operation office visits. Tr. at 210, 211, 212, 282, 289 (duplicate citations omitted). It goes without saying that X-rays constitute objective medical evidence. The ALJ did not adequately explain how Dr. Keller's progress notes "lack any specific objective medical findings or assessments." Tr. at 23.

In addition, the ALJ stated, "Dr. Keller apparently did not read his own treatment notes as he did not recommend any further CT scan be done as per his office note dated November 14, 2006 . . . due to the fact that no hardware removal was being contemplated for this patient." Tr. at 22 (citing Tr. at 198). A review of Dr. Keller's treatment notes shows that he had serious concerns about whether he should remove Plaintiff's hardware due to infections she suffered after her surgery in 2005, described supra p. 8-9. Tr. at 200 (stating that "there is a remote possibility of there being an infection involving the hardware"). Dr. Keller's August 24, 2006 progress notes state that "[i]t may be in [Plaintiff's] best interest to remove this hardware if we can establish by x-rays or CT scan that she has a solid fusion." Tr. at 200 (emphasis added) (also stating that "[i]t may be that her pain is not going to improve regardless of what we do"). X-rays from November 14, 2006 showed "no clear evidence of a solid fusion . . . ." Tr. at 198. Thus, Dr. Keller determined that he would not recommend a CT scan "since we are not planning on any kind of hardware removal." Tr. at

198.  In his October 2, 2007 letter, Dr. Keller simply informed the ALJ that the only way to determine definitively whether Plaintiff had a solid fusion is with a CT scan.  Tr. at 100.  In light of the context, it is difficult to understand, and the ALJ did not explain, how Dr. Keller's opinion in the October 2, 2007 letter that there was no definitive evidence of a solid fusion contradicts his treatment notes.  On remand, the ALJ should more clearly explain the perceived contradiction.

Another aspect of the ALJ's decision that requires additional explanation is the assertion that Dr. Keller's progress notes following Plaintiff's surgery "in no way indicate" that Plaintiff is as limited as Dr. Keller's October 2, 2007 letter suggests.  Tr. at 22.  There is evidence which contradicts this statement.  A review of the July 14, 2005 progress notes to which the ALJ referred shows that Plaintiff was indeed in pain and quite limited in her ability to function.  These notes from the July 14, 2005 post-operation office visit state that Plaintiff was doing "reasonably well," Tr. at 282, but this statement must be viewed in the context of Plaintiff having had major surgery two weeks prior.  The ALJ does not mention that one week later Plaintiff called Dr. Keller's office complaining that the Neurontin she had been prescribed was not effectively controlling her pain.  Tr. at 265 (duplicate citations omitted).  During the July 28, 2005 office visit, it appears Dr. Keller was mainly concerned with the problems Plaintiff was having with the surgical wound, described supra p. 8-9.  Tr. at 256.  As previously explained, the problems at the wound site persisted and were addressed during subsequent office visits.  Tr. at 231, 235, 237, 239, 241, 254-56 (duplicate citations omitted).  On September 2, 2005, Dr. Keller noted that Plaintiff's leg pain was continuing.  Tr. at 253 (duplicate citations omitted).  On September 29, 2005, Dr. Keller noted that Plaintiff was still

complaining of pain in her legs. Tr. at 249 (duplicate citation omitted). A review of Dr. Keller's progress notes reveals that Plaintiff consistently complained of pain. Tr. at 103, 107-08, 194, 197-201, 206, 207, 210, 211, 212, 214, 265, 282. Dr. Keller's findings that Plaintiff's fusion was not solid could explain Plaintiff's pain. Tr. at 197-98, 200. The ALJ has not adequately explained why he believed Dr. Keller's progress notes following Plaintiff's surgery "in no way indicate" that Plaintiff is as limited as Dr. Keller's October 2, 2007 letter suggests.

Similarly, the ALJ did not explain or identify any record support for the statement that Plaintiff's condition was improving. Tr. at 22. This statement appears to be contrary to the medical evidence, as Dr. Keller stated on May 17, 2007 that he was "not sure that there is much more we can expect from this [surgery] now that we are out almost two years." Tr. at 197 (noting that Plaintiff complained Lyrica was not helping her pain). In June 2007, Plaintiff's treating physicians were contemplating additional intervention with a spinal cord stimulator. Tr. at 108. Remand for the ALJ to clearly articulate his reasons for finding Plaintiff condition was improving is appropriate.

The ALJ also observed that Plaintiff is "not on significant pain medication." Tr. at 22. As explained infra p. 19-20, however, Plaintiff testified that pain medication is not effective in relieving her pain, and the only way Plaintiff can effectively manage her pain is by avoiding any activity that causes pain. Tr. at 430-31. The ALJ's observation that Plaintiff is not taking pain medication does not provide substantial evidence for discounting Dr. Keller's opinion.

Based on the foregoing, the ALJ has not adequately explained his decision to discount the opinion of Dr. Keller. Although the ALJ correctly determined that Dr. Keller's opinion with respect to radiculopathy was contradicted by the findings of Dr. Collier, all of the ALJ's other

reasons lack adequate articulation.  On remand, the ALJ should reevaluate the evidence with respect to Dr. Keller's opinion and determine the proper weight it should be given, clearly articulating adequate reasons supported by substantial evidence if Dr. Keller's opinion is discounted.

### B.  Opinion of Dr. Witkind

Plaintiff contends that "very little, if any weight" should be afforded Dr. Witkind's opinion because Dr. Witkind is a nonexamining physician, and his opinion conflicts with the opinion of Dr. Keller, a treating physician.  Pl.'s Mem. at 19.  In making an RFC assessment, Dr. Witkind opined as follows:  Plaintiff can lift and carry up to twenty-five pounds frequently and can occasionally lift up to thirty pounds; Plaintiff can sit, stand, and walk eight hours each in an eight-hour workday; Plaintiff does not require a cane to ambulate; Plaintiff can frequently reach, handle, finger, feel, and push and pull; Plaintiff can continuously operate foot controls; Plaintiff can frequently climb stairs and ramps; she can occasionally stoop, kneel, crouch, and crawl; she cannot frequently bend at the waist; and she can never climb ropes, ladders, or scaffolds.  Tr. at 185-87, 385-88.  Dr. Witkind further found Plaintiff can never work at unprotected heights, and she should frequently avoid working near the following: moving mechanical parts, operating motor vehicles, humidity and wetness, dust and pulmonary irritants, and extremes in heat and cold.  Tr. at 187-89, 388-91.  The ALJ gave Dr. Witkind's opinion "greater weight" than the opinion of Dr. Keller.  Tr. at 21.

Generally, a nonexamining physician's opinion is given less weight than that of a treating or examining physician.  20 C.F.R. § 404.1527(d)(1).  Nonetheless, every medical opinion should be considered in making the disability determination.    20 C.F.R.

§ 404.1527(d).  The following factors are relevant in determining the weight to be given to a physician's opinion:  (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."  20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); <u>see also</u> 20 C.F. R. §§ 404.1527(f), 416.927(f).  "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  <u>Oldham v. Schweiker</u>, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981) (citing 20 C.F.R. § 404.1526 (1980)); <u>see also</u> 20 C.F.R. § 404.1527(d)(2).

Applying these factors to Dr. Witkind's opinion leads to the conclusion that his opinion is not entitled to "greater" weight.  It is evident that Dr. Witkind did not treat or examine Plaintiff.  Tr. at 370.  Therefore, the first two factors weigh against Dr. Witkind.  Moreover, it is difficult to understand how he could assess Plaintiff's pain without actually examining her.  Still, Dr. Witkind is board certified in neurosurgery, which weighs in favor of his opinion.

As to the supportability of Dr. Witkind's opinion and its consistency with the record, Dr. Witkind reviewed 172 pages of medical records that had been submitted to the Commissioner.  Tr. at 368.  It appears those 172 pages have been included in the record on appeal, but the record does not contain any of the images from the CT scans or X-rays that were taken of Plaintiff's spine.  The undersigned can only assume Dr. Witkind did not actually review them and instead relied on his interpretation of Dr. Keller's and other physicians' descriptions of the X-rays and CT scans.  One notable example is the May 17, 2007 X-ray, which according to Dr. Keller showed that the implants were "were in good position without a particularly robust fusion," although there was "certainly no evidence of loosening or

failure." Tr. at 197. Dr. Witkind interpreted this to mean that Dr. Keller believed there was an "adequate" or "stable" fusion. Tr. at 379-80, 402. However, in his October 2, 2007 letter, Dr. Keller clarified his May 17, 2007 progress notes and stated that the X-ray "showed that [Plaintiff] still did not have a solid fusion, though there was some slight movement in that direction." Tr. at 100. Once again, Dr. Witkind did not actually review the X-rays; rather, he reviewed Dr. Vicenty's description of the X-rays, and only Dr. Vicenty can authoritatively say what he meant in his progress notes. As indicated supra pp. 9-10, the undersigned is unsure whether there is a difference between a "solid" fusion, an "adequate" fusion, and a "stable" fusion. If there is a difference, the distinctions between these terms are unclear. Without a more thorough explanation, there is a possibility that Dr. Witkind misinterpreted Dr. Keller's May 17, 2007 progress notes, and therefore Dr. Witkind could have based his RFC opinion on an incorrect understanding of Dr. Keller's progress notes. The record does not reflect whether Dr. Witkind's opinion would change based on Dr. Keller's clarification in the October 2, 2007 letter. Tr. at 404-05. Without a more thorough explanation from the ALJ, it is not possible to determine whether Dr. Witkind's RFC opinion is supported by and consistent with the evidence. On remand, the ALJ should reconsider the weight given to Dr. Witkind's opinion and determine whether Dr. Witkind should have the opportunity to revisit or further explain his opinion in light of Dr. Keller's clarification as to the fusion.

### C. Plaintiff's Subjective Complaints of Pain

Plaintiff argues the ALJ erred in discrediting Plaintiff's pain testimony. Pl.'s Mem at 20-25. "In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical

condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). If it is determined that a claimant has a medical condition that could reasonably give rise to the pain alleged, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." Foote, 67 F.3d at 1561.

"The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223; Foote, 67 F.3d at 1561. Although "credibility determinations are the province of the ALJ," Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005), "explicit and adequate reasons" must be articulated if the ALJ discredits the claimant's testimony. Wilson, 284 F.3d at 1225; see also Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005); Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (stating that "after considering a claimant's complaints of pain [or other subjective symptoms], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence"). When considering the claimant's pain testimony, the Regulations provide that the following factors should be considered: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication; (6) measures used to alleviate pain or other symptoms; and (7) the claimant's functional limitations. 20 C.F.R. §§ 404.1529(c)(3),

416.929(c)(3); see also Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished).

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." Tr. at 25. The ALJ articulated the following reasons for discrediting Plaintiff's complaints of pain: her complaints of pain are inconsistent with her daily activities; she takes "no medications whatsoever, either prescribed by a doctor or purchased over the counter"; and "there is simply nothing in the medical evidence to support [Plaintiff]'s allegation of total disability." Tr. at 25.

With respect to Plaintiff's daily activities, the ALJ found that Plaintiff "cooks, does her laundry, and makes her bed, " "occasionally sweeps and vacuums her carpet," "can get out of her bathtub," and "occasionally goes out to eat and goes to church." Tr. at 24. There are some discrepancies between the ALJ's summary of Plaintiff's testimony and the actual testimony. Plaintiff testified that she forces herself to perform some tasks that cause her pain "because I have to live." Tr. at 438. Plaintiff does only "some" housework. Tr. at 438. Plaintiff testified that she is able to perform household chores only by completing them with incremental breaks. Tr. at 438-39. When she sweeps a small area, she has to sit down five or six times. Tr. at 438. When she cooks or does the laundry, she has to sit down "a lot" to finish those tasks. Tr. at 438-39. "[M]aking up the bed, that's like an all-day thing." Tr. at 438-39.

The United States Court of Appeals for the Eleventh Circuit has stated that participation in everyday activities of short duration, such as housework or fishing, do not disqualify a claimant from disability. Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997). In Foote v. Chater, 67 F.3d 1553 (11th Cir. 1995), a claimant's activities of daily living were comprised of lifting and carrying objects up to ten pounds, performing light household chores, including cooking, driving and shopping for needed household items, walking around the mobile home park where she lived for exercise, and caring for her own needs, including bathing, feeding, and dressing, although she experienced pain when putting on her undergarments. Id. at 1561. Noting that the claimant had "consistently complained of pain to her treating doctors," the Eleventh Circuit stated that the claimant's testimony as to her daily activities was not sufficient to support the conclusion that her pain was not so disabling as to have significantly affected her RFC. Id. Similarly, here Plaintiff's activities of daily living do not appear to be inconsistent with her complaints of debilitating pain. On remand, the ALJ should reconsider Plaintiff's activities of daily living and articulate explicit and adequate reasons why they are inconsistent with Plaintiff's complaints of pain if the ALJ determines Plaintiff's complaints of pain are not credible.

With respect to Plaintiff's medications, the ALJ found Plaintiff is taking "no medications whatsoever." Tr. at 25. However, Plaintiff testified that she still has her pain medication, but she does not take it "that often." Tr. at 433. Plaintiff has been prescribed Medrol, Bextra, Soma, Neurontin, Mepergan, Elavil, Vicodin, Lortab, Percocet, Tylox, and Lyrica. Tr. at 206, 208, 211-12, 214, 282, 349, 352-53, 356, 436. Plaintiff explained that she tries not to take pain medication because it is not effective in relieving her pain, Tr. at 433, and she is afraid

of becoming addicted to the pain medication, Tr. at 459. In fact, Plaintiff testified, "If I took enough pain medication for me not to hurt, I wouldn't be able to drive to go to work. . . . I wouldn't be able to function." Tr. at 459. Rather than taking copious amounts of ineffective pharmaceutical pain medication, Plaintiff controls her pain by avoiding activities that exacerbate her pain. Tr. at 433-34. Plaintiff explained that, if she were active, she would be unable to "take enough medication to make the pain go away." Tr. at 434. In other words, by remaining inactive, Plaintiff is able to avoid causing herself pain and thereby control her pain. See Tr. at 434-37. The ALJ failed to address Plaintiff's explanation as to why she was not taking as much pain medication as the ALJ believed would be indicative of debilitating pain. Therefore, the ALJ did not provide an adequate explanation for discounting Plaintiff's complaints of pain based on the view that Plaintiff was not taking amounts of medication that would suggest disability. On remand, the ALJ should reconsider Plaintiff's medication and articulate explicit and adequate reasons for discrediting Plaintiff's complaints of pain based on her medication if he determines her complaints of pain should be discredited.

Finally, the ALJ found that "there is simply nothing in the medical evidence to support [Plaintiff]'s allegation of total disability." Tr. at 25. This finding is arguably inconsistent with the ALJ's finding that Plaintiff's medically determinable impairments could reasonably be expected to produce some of her alleged symptoms. Tr. at 25. In addition, Dr. Keller's treatment records reflect Plaintiff's consistent complaints of pain. Tr. at 103, 107-08, 194, 197-201, 206, 207, 211, 212, 214, 282. In fact, Dr. Keller's treatment records, as well as his October 2, 2007 letter, constitute medical evidence supporting Plaintiff's complaints of pain. Furthermore, on September 10, 2007, Dr. Collier completed a Listing 1.04 Interrogatories

form, which states that Plaintiff's back problems meet the listing of impairments.  Tr. at 110-11.  Because the ALJ did not address evidence in the record that appears to be contrary to the ALJ's finding that there is "nothing" in the record to support Plaintiff's allegations of debilitating pain, remand for the ALJ to provide an adequate explanation is appropriate.

Upon a thorough review of the entire record, the ALJ's failed to articulate explicit and adequate reasons for discrediting Plaintiff's subjective complaints of pain.  Plaintiff's activities of daily living are not necessarily inconsistent with her complaints of pain.  The ALJ failed to address Plaintiff's explanation for not taking her prescription pain medication regularly.  The ALJ's finding that there is "nothing" to support Plaintiff's complaints of pain is inconsistent with the some aspects of record that the ALJ did not address.

### V.  Conclusion

The ALJ did not articulate reasons supported by substantial evidence for discounting the opinion of Dr. Keller.  In addition, the ALJ did not adequately explain his decision to give Dr. Witkind's opinion great weight.  Furthermore, the ALJ did not articulate reasons supported by substantial evidence for discrediting Plaintiff's subjective pain testimony.  After thoroughly reviewing the entire record, the undersigned finds that remand is appropriate.  In accordance with the foregoing, it is

**ORDERED:**

1.  The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's decision and **REMANDING** this matter with the following instructions:

(A)    Reevaluate the evidence with respect to Dr. Keller's opinion and state the weight it is given. If the ALJ decides to discount Dr. Keller's opinion, adequate reasons supported by substantial evidence should be articulated;

(B)    Reconsider the weight given to Dr. Witkind's opinion and determine whether Dr. Witkind should be given the opportunity to revisit or further explain his opinion in light of the clarification from Dr. Keller in his October 2, 2007 letter; and

(C)    Reevaluate Plaintiff's subjective complaints of pain and other symptoms in light of all of the evidence of record and explicitly consider all of the factors set forth in 20 C.F.R. § 404.1529(c)(3).

2.    The Clerk is directed to close the file.

3.    If benefits are awarded on remand, Plaintiff's counsel shall have thirty (30) days from receiving notice of the amount of past due benefits to seek the Court's approval of attorney's fees pursuant to 42 U.S.C. § 406(b). See Bergen v. Comm'r Soc. Sec., 454 F.3d 1273 (11th Cir. 2006).

**DONE AND ORDERED** at Jacksonville, Florida on September 30, 2009.

jdf
Copies to:
Counsel of Record

_James R. Klindt_
**JAMES R. KLINDT**
United States Magistrate Judge

-22-